IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RUSSELL SMITH, #219814 | * | |
| Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. PJM-10-2929 |
| GARY D. MAYNARD | * | |
| RICHARD B. ROSENBLATT | | |
| LAWRENCE G. FRANKLIN | * | |
| MICHAEL J. STOUFFER | | |
| | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Procedural History

  This 48-page complaint involves Russell Smith's ("Smith") claim[1] against four Maryland executive prison officials for abdicating their responsibility to provide him adequate medical care by delegating such constitutional obligations to a private health care contractor, Correctional Medical Services, Inc. ("CMS"). His pro se motion, construed as a 42 U.S.C. § 1983 civil rights action, seeks declaratory, nominal, and punitive damages along with declaratory relief. The first five pages of the Complaint are replete with conclusory legal statements which reference the United States and Maryland Constitutions and United States Code citations. Smith then delves into a discussion of the legislative history of Maryland's adoption of the United States Constitution. He finally references the crux of his claim: the State's failure to satisfy its constitutional obligation to provide adequate medical care to inmates by delegating the responsibility to CMS. In fairly naked assertions, he alleges that his right to due process (liberty interest in personal security) and equal protection, and

---

  1  At all relevant times in this Complaint, Smith was confined to the Eastern Correctional Institution, a facility within the Maryland Division of Correction.

ability to circumvent cruel and usual punishment have been violated by the "union" of the Defendant "municipal" corporation/officers with private corporation (CMS) motivated by consideration of budget and profit. (ECF No. 1 at p. 11). He seemingly complains that medical personnel are not subject to the Maryland Administrative Remedy Procedure ("ARP") process under Maryland caselaw.

Smith alleges that the bone above his right big toe was fractured in July of 2005 and incorrectly diagnosed as a bunion, and he has not received adequate care for his toe in subsequent years. He further complains that he received an injury to his right shoulder in January of 2008 and suffered a right torn bicep, fractured collarbone, nerve damage, and numbness to his right hand, but has not been afforded the surgery recommended by healthcare staff.[2] Smith also claims that he developed a severe rash on his face and scalp and sought treatment in November of 2009, but has not received care for same. He contends that the denial of medical care for those three conditions and in other inmates' cases is illustrative of the Defendants' purposeful intent to shield themselves from responsibility by assigning the medical care to CMS.

While these medical contentions comprise the gravamen of Smith's case, his Complaint cites provisions relating to "Cruel and Unusual Punishment," "Equal Protection," "Declaratory Judgment," "Title of Nobility," and the Supremacy Clause. (ECF No. 1 at pgs. 21-45.) The passages are brimming with legal citations but, in essence, go to Smith's claim that Defendants are contracting out their "mandatory governmental function" to provide adequate medical care to state inmates. (*Id.* at p. 27).

---

[2] Smith acknowledges that his right shoulder and hand injury was the subject of § 1983 litigation in *Smith v. Mathis, et al.*, PJM-08-3302 (D. Md.). The medical Defendants' summary judgment motion was recently granted on January 26, 2012, and the case closed, the Court finding no evidence of deliberate indifference. *Id*. at ECF Nos. 109 & 110.

On March 9, 2011, Defendants filed a timely Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[3] (ECF No. 16). Smith has filed Oppositions thereto. (ECF Nos. 19 & 22). For reasons to follow, Defendants' Motion, construed as a motion for summary judgment, shall be granted.

Under recent revisions to Fed. R. Civ. P. 56(a) & (c) (1) (A) and (B):

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Under Supreme Court standard, this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should

---

[3] Smith filed a Motion for Default Judgment on March 14, 2011. (ECF No. 18). In light of Defendants' timely dispositive filing, Smith's Motion will be denied.

"view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

      The Prison Litigation Reform Act ("PLRA") generally requires a prisoner to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Thus, the exhaustion provision plainly extends to Smith's allegations against Maryland prison administrators.  His Complaint must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants forfeited their right to raise non-exhaustion as a defense.  *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

      The PLRA's exhaustion requirement is designed so that prisoners pursue administrative

grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Id.* at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after the prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003), *abrogated on other grounds by Woodford v. Ngo*, 548 U.S. 81 (2006) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not also seek judicial review); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated within thirty calendar days of the incident (or of the date the inmate first gained knowledge of the incident or injury) is the first of three steps in the ARP process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office. *See* Division of Correction Directive 185-002.VI.L-N; *see also* Md. Code Ann. Corr. Serv. §§ 10-201 to 10-209.

Defendants argue that while Smith filed four grievances before filing this action, none concerned his medical treatment. ECF No. 16, Stouffer Decl. Smith submitted supplemental materials reflecting ARPs filed concerning his rash, toe, and shoulder problems. (ECF No. 22). Even if the materials are valid, these documents show that Smith's attempt to exhaust remedies was

5

belatedly made from April to July of 2011 and was incomplete, as he failed to complete all three levels of the Division of Correction ("DOC") administrative remedy process. While this Court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials," *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007), there is no allegation here that Smith, through no fault of his own, was prevented from availing himself of the ARP process. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Instead, Smith through his own actions failed to follow through with the full ARP process offered by the DOC. Therefore, Defendants' motion for summary judgment for failure to exhaust administrative remedies shall be granted. A separate Order follows.


February 9, 2012
/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE